UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :

    - v. -                              :

BRIAN BENJAMIN,                     :

           Defendant.          :

- - - - - - - - - - - - - - - - X

**SEALED SUPERSEDING**
**INDICTMENT**

S2 21 Cr. 706 (JPO)

## Overview

1.  From at least in or about 2019, up to and including at least in or about 2021, BRIAN BENJAMIN, the defendant, participated in a scheme to obtain campaign contributions from a real estate developer ("CC-1") in exchange for BENJAMIN's agreement to use, and actual use of, his official authority and influence as a New York State senator to obtain a $50,000 grant of state funds (the "State Grant") for a non-profit organization controlled by CC-1 ("Organization-1"). In so doing, BENJAMIN abused his authority as a New York State senator, engaging in a bribery scheme using public funds for his own corrupt purposes.

2.  BRIAN BENJAMIN, the defendant, and others acting at his direction or on his behalf, also engaged in a series of lies and deceptions to cover up his scheme, including by falsifying campaign donor forms, misleading municipal regulators, and providing false information in vetting forms BENJAMIN submitted while under

consideration to be appointed the next Lieutenant Governor of New York State.

## Background

3.    From in or about June 2017 through in or about September 2021, BRIAN BENJAMIN, the defendant, served as an elected legislator in the New York State senate representing District 30, which encompassed areas in northern Manhattan, including Harlem. As a senator, BENJAMIN had occasion to use his official authority and influence to direct certain state funds to various organizations within his district.

4.    At all relevant times, CC-1 owned and controlled a real estate development business based in Harlem. CC-1 also founded, controlled, and was publicly associated with Organization-1, a non-profit organization that donated, among other things, school supplies and other resources to various public school programs and students in Harlem.

5.    BRIAN BENJAMIN, the defendant, and CC-1 first met in or about 2017. From that time through in or about early 2019, BENJAMIN and CC-1 had a number of interactions, and CC-1 provided financial support for community events promoted by BENJAMIN or his senate district office, as well as contributions to BENJAMIN's political campaign. BENJAMIN, in turn, attended various events connected to CC-1 and Organization-1.

6.     In or about early 2019, in addition to running for reelection to the New York State senate, BRIAN BENJAMIN, the defendant, began planning a campaign for New York City Comptroller. In or about September 2019, BENJAMIN filed a certification with the New York City Campaign Finance Board ("CFB") announcing that he was considering becoming a candidate in the 2021 election for that office. BENJAMIN's filing of that certification permitted him to begin raising money for such a campaign (the "Comptroller Campaign"). As part of that certification, BENJAMIN also indicated that he intended to participate in the CFB's matching funds program, which provides public funds to match small contributions in order to empower everyday New York City residents in elections. The matching funds program allowed candidates to obtain as much as $8 in taxpayer funds for every $1 of each eligible contribution, up to a particular amount. For example, during the 2021 primary election, a qualifying contribution of $250 could result in up to $2,000 in public matching funds paid by New York City directly to the campaign, significantly amplifying the impact of small contributions. BENJAMIN was focused on soliciting and obtaining contributions that were eligible to receive public matching funds, and his Comptroller Campaign received at least approximately $2 million in public funds.

7.     In or about June 2021, BRIAN BENJAMIN, the defendant, competed in, but did not win, a primary election for New York City

Comptroller. Thereafter, BENJAMIN ceased to be a candidate for the office of New York City Comptroller, but he continued to serve as a New York State senator.

8.    On or about August 26, 2021, the Governor of the State of New York announced that BRIAN BENJAMIN, the defendant, would be appointed as the new Lieutenant Governor of the State of New York. BENJAMIN was sworn in as Lieutenant Governor on or about September 9, 2021.

### The Bribery Scheme

#### *Benjamin Asks CC-1 to Bundle Campaign Contributions*

9.    On or about March 8, 2019, BRIAN BENJAMIN, the defendant, attended a meeting at CC-1's residence. At that meeting, BENJAMIN told CC-1, in substance and in part, that BENJAMIN intended to run for the office of New York City Comptroller, and that BENJAMIN wanted CC-1 to procure numerous small contributions for his Comptroller Campaign. In response, CC-1 told BENJAMIN, in substance and in part, that CC-1 did not have experience bundling political contributions in this manner; that CC-1's fundraising efforts were focused on Organization-1; and that CC-1's ability to procure contributions for BENJAMIN's Comptroller Campaign was limited, in part because potential donors from whom CC-1 was likely to solicit contributions were the same donors from whom CC-1 had solicited and intended to further solicit contributions for

Organization-1. In response, BENJAMIN told CC-1, in substance and in part, "Let me see what I can do."

### BENJAMIN Uses His Official Authority to Allocate State Funds to Organization-1

10.   Before the March 2019 meeting at CC-1's residence, and as part of the annual New York State budget process, BRIAN BENJAMIN, the defendant, requested discretionary funding for certain organizations and entities within his district. In particular, in or about February 2019, BENJAMIN sent a letter on his official senate letterhead to the senate's Majority Leader, providing a list of his legislative priorities and the organizations for which BENJAMIN was requesting state funds. Although BENJAMIN had been familiar with Organization-1 and its charitable work in his district since at least in or about 2018, that list did not include Organization-1.

11.   In the February 2019 letter, BRIAN BENJAMIN, the defendant, requested funding for, among other organizations, at least one other non-profit organization based in Harlem ("Organization-2") that had an educational purpose. Unlike Organization-1, Organization-2 had submitted a request to BENJAMIN's senate office for grant funding in 2019.

12.   In or about April 2019, a final New York State budget was released that included funding directed to some, but not all, of the organizations for which BRIAN BENJAMIN, the defendant, had

requested funds. It did not include the funding that Organization-2 had requested from BENJAMIN's senate office.

13.  On or about May 30, 2019, the senate's Majority Leader and senate staff informed certain senators, including BRIAN BENJAMIN, the defendant, that they had been awarded additional discretionary funding that each could allocate to organizations in their districts for specified purposes. That additional funding included, among other things, up to $50,000 that BENJAMIN could allocate to school districts, libraries, or non-profit organizations for educational purposes. BENJAMIN did not allocate any portion of the $50,000 to Organization-2, or to any other organizations with educational purposes listed in his February 2019 priorities letter.

14.  Instead, on or about May 31, 2019, less than three months after telling CC-1, in substance and in part, "Let me see what I can do," BRIAN BENJAMIN, the defendant, called CC-1 and told CC-1 that BENJAMIN intended to procure a $50,000 grant for Organization-1.

15.  Shortly thereafter, BRIAN BENJAMIN, the defendant, sent a staff member a form allocating $50,000 in state funds to Organization-1. Another staff member submitted that form to senate staff on or about June 3, 2019.

16.  On or about June 19, 2019, the senate approved a resolution that, among other things, allocated $50,000 to

Organization-1. The resolution was sponsored by the senate's Majority Leader. Accordingly, the allocation to Organization-1 was not publicly identified in the resolution as having been caused by BRIAN BENJAMIN, the defendant. Although the resolution allocated $50,000 to Organization-1, the State Grant was not immediately disbursed because additional process and approvals by administering state agencies were required.

17. The following day, on or about June 20, 2019, BRIAN BENJAMIN, the defendant, sent several text messages to CC-1, including a screenshot of a page from the resolution that reflected the $50,000 allocation to Organization-1, and a message that asked CC-1, "Do you recognize the 3rd entity on the list?" CC-1 later responded to BENJAMIN by saying, "I do very much--does it mean what I'm hoping?" BENJAMIN then confirmed, in part, "Oh yes it does. We passed the resolution yesterday! $50k. [. . .] I will call to discuss!"

### CC-1 Makes and Procures Contributions

18. Approximately two weeks later, on or about July 8, 2019, CC-1 met with BRIAN BENJAMIN, the defendant, at BENJAMIN's senate district office in Harlem (the "District Office"). During that meeting, CC-1 gave BENJAMIN: (i) a $10,000 cashier's check in the name of one of CC-1's relatives who did not share CC-1's last name ("Relative-1"); (ii) a $10,000 personal check in the name of another of CC-1's relatives who likewise did not share CC-1's last

name ("Relative-2"); and (iii) a $5,000 check on behalf of a limited liability company controlled by CC-1 (the "CC-1 LLC"). Each check was made out to "Benjamin for New York," which was BENJAMIN's senate campaign committee (the "Senate Campaign"). Because BENJAMIN had not yet filed a certification regarding his Comptroller Campaign with the CFB, BENJAMIN could accept campaign contributions only to his Senate Campaign. As a state campaign, the Senate Campaign was not eligible for public matching funds available in New York City municipal races. During the same meeting, BENJAMIN reminded CC-1, in substance and in part, of the State Grant for Organization-1 and that BENJAMIN still expected CC-1 to procure numerous small contributions for his Comptroller Campaign.

19. In the course of the meeting in the District Office, CC-1 told BRIAN BENJAMIN, the defendant, information concerning Relative-1 and Relative-2 that made clear to BENJAMIN that the contributions were funded not by Relative-1 and Relative-2, but by CC-1. CC-1 had made these contributions in the names of two other individuals and the CC-1 LLC in an attempt to conceal any connection between CC-1 and the contributions. BENJAMIN took the three checks from CC-1, and gave CC-1 three blank contribution forms that BENJAMIN directed CC-1 to complete. In BENJAMIN's presence, CC-1 provided certain information requested by each form, and then signed the names of Relative-1 and Relative-2 on

the forms corresponding to each $10,000 contribution. CC-1 then gave the forms back to BENJAMIN. After reviewing the forms, BENJAMIN returned them to CC-1, and instructed CC-1 to provide additional information on the forms regarding Relative-1 and Relative-2. CC-1 did so, and returned the forms to BENJAMIN. Despite knowing that the contributions purportedly made in the names of Relative-1 and Relative-2 were in fact made and funded by CC-1, BENJAMIN accepted the contributions.

20. On or about September 12, 2019, BRIAN BENJAMIN, the defendant, attended an annual fundraising event for Organization-1. During that event, BENJAMIN presented CC-1 and Organization-1 with an oversized novelty check in the amount of $50,000. The novelty check was signed by BENJAMIN himself. This reminder of BENJAMIN's use of his official authority for Organization-1's benefit took place one week before BENJAMIN became eligible to receive contributions to his Comptroller Campaign.

21. After filing his certification with the CFB on or about September 19, 2019, BRIAN BENJAMIN, the defendant, was permitted to begin accepting funds for his Comptroller Campaign. In or about early October 2019, BENJAMIN called CC-1 and specified the types of contributions that BENJAMIN expected CC-1 to procure, including that such contributions should be no more than $250, and paid for by check or money order. That is, BENJAMIN sought to ensure that

CC-1 procured contributions that BENJAMIN believed to be eligible for public matching funds. Shortly thereafter, a member of BENJAMIN's staff emailed CC-1 a copy of the contribution form used by the Comptroller Campaign.

22. From at least in or about October 2019 through at least in or about January 2021, CC-1 provided numerous contributions to the Comptroller Campaign (the "CC-1 Contributions"), many of which were fraudulent. A number of the CC-1 Contributions were made in the names of individuals who, in fact, had not authorized the contributions. Certain other CC-1 Contributions were made in the names of individuals who had not personally funded the contributions, or who were reimbursed for such contributions.

23. During that same period, BRIAN BENJAMIN, the defendant, communicated periodically with CC-1 about CC-1's ongoing fundraising efforts. BENJAMIN also communicated with staff and advisors for his Comptroller Campaign about CC-1's fundraising efforts, and specifically described certain contributions as having been collected by CC-1. On more than one occasion, BENJAMIN personally met with CC-1 to receive CC-1 Contributions. In one instance, BENJAMIN met with CC-1 on the street to collect a bundle of CC-1 Contributions. When CC-1 was procuring the CC-1 Contributions, the State Grant had not been disbursed and BENJAMIN retained the ability to alter or withdraw it.

24. Prior to in or about January 2021, Organization-1 continued working to navigate state administrative processes necessary to ensure that the State Grant was in fact disbursed. On or about January 4, 2021, a news outlet published an article raising questions about the legitimacy of various contributions to the Comptroller Campaign, including certain of the CC-1 Contributions. After that article was published, Organization-1 ceased its efforts to secure disbursement of the State Grant. To date, the $50,000 has not been disbursed to Organization-1.

25. On or about October 21, 2020, during the course of and as part of their corrupt relationship, BRIAN BENJAMIN, the defendant, called CC-1 and said, in substance and in part, that if CC-1 contributed $15,000 to a particular political campaign committee ("Committee-1"), BENJAMIN would help CC-1 obtain a zoning variance permitting construction on a property owned by CC-1 in Harlem. In prior discussions, BENJAMIN and CC-1 had discussed that obtaining a zoning variance would involve, among other things, seeking approval from the local community board (the "Community Board"), of which BENJAMIN had previously served as chair, and BENJAMIN had told CC-1, in substance and in part, that it would be very difficult to obtain such approval. On or about October 21, 2020, however, BENJAMIN told CC-1 that he would help CC-1 obtain the Community Board's approval in return for a contribution to Committee-1. On or about November 13, 2020, CC-1 contributed

$15,000 to Committee-1. To date, the matter of the zoning variance sought by CC-1 has not come before the Community Board.

### BENJAMIN's Efforts to Conceal the Bribery Scheme and His Corrupt Relationship with CC-1

26. From 2019 up to and including the period of his consideration for, and service as, Lieutenant Governor of New York, BRIAN BENJAMIN, the defendant, and others acting on his behalf and at his direction, engaged in a series of lies and deceptions in order to conceal the bribery scheme and BENJAMIN's connection to CC-1.

27. In or about November 2019, the New York State Board of Elections ("BOE") notified the Senate Campaign that it had failed to file certain forms required to identify owners of several limited liability companies ("LLCs") that had made contributions to the Senate Campaign. Those LLCs included the CC-1 LLC, through which CC-1 had made the $5,000 contribution to BRIAN BENJAMIN, the defendant, during the meeting at BENJAMIN's District Office on July 8, 2019, only a few weeks after the State Grant had been allocated to Organization-1. In or about January 2020, a member of BENJAMIN's staff sent BENJAMIN an email listing LLCs for which disclosures were necessary, specifically identifying the CC-1 LLC as being associated with CC-1, and asked BENJAMIN to obtain ownership information about the CC-1 LLC and other LLCs. Within minutes, BENJAMIN responded and asked, "What happens if someone

refuses to provide the information?" Ultimately, although the Senate Campaign provided the BOE with ownership information about certain LLCs not associated with CC-1, it never provided such information about the CC-1 LLC.

28.   In or about February 2020, the CFB informed the Comptroller Campaign that certain of the CC-1 Contributions were ineligible for matching funds because, among other reasons, the contributions had been funded by sequentially numbered money orders. In response, in or about July 2020, the Comptroller Campaign submitted to the CFB forms indicating that certain of the CC-1 Contributions had been procured by a particular individual ("Individual-1"). In truth and in fact, and as BRIAN BENJAMIN, the defendant, well knew, CC-1 had procured those contributions.

29.   On or about January 4, 2021, a news outlet published an article raising questions about the legitimacy of certain contributions to the Comptroller Campaign, including, in particular, certain of the CC-1 Contributions. The next day, in response to the article, BENJAMIN's Comptroller Campaign submitted a misleading letter to the CFB that stated, in substance and in part, that the Comptroller Campaign had no reason at the time to question the legitimacy of the contributions, in light of, among other things, Individual-1's reputation in the community. When the letter was submitted, however, BENJAMIN knew that the CC-1

Contributions had in fact been procured by CC-1, not Individual-1.

30. On or about August 17, 2021, while BRIAN BENJAMIN, the defendant, was under consideration to be appointed Lieutenant Governor of the State of New York, BENJAMIN submitted an executive appointment questionnaire to the New York State Office of General Services addressing, among other things, his relationships with political contributors. Despite BENJAMIN's direct solicitation of political contributions from CC-1 and his exercise of official authority to allocate the State Grant to Organization-1, BENJAMIN falsely stated, among other things, that he had never "directly exercised [his] governmental authority (either as a Legislator or Executive official) concerning a matter of a donor [he] directly solicited." Approximately two hours after BENJAMIN submitted the questionnaire containing that false response, he called CC-1 for the first time in six months.

31. On or about November 29, 2021, following public reporting that questioned the accuracy of certain answers that BRIAN BENJAMIN, the defendant, had provided in the questionnaire, BENJAMIN submitted an amended questionnaire changing certain answers and including an addendum with additional responses. In his amended questionnaire, BENJAMIN again falsely stated that he had never "directly exercised [his] governmental authority (either as a Legislator or Executive official) concerning a matter of a

donor [he] directly solicited." Moreover, in the addendum, BENJAMIN falsely added that while he regularly voted on legislation with broad implications, he was "not aware of any specific matter that related to a particular donor." In fact, as BENJAMIN well knew, he had exercised his official authority to allocate funds to Organization-1, CC-1's non-profit organization, and had repeatedly directly solicited CC-1 for campaign contributions.

### Statutory Allegations

### COUNT ONE

**(Bribery and Honest Services Wire Fraud Conspiracy)**

The Grand Jury charges:

32. The allegations contained in paragraphs 1 through 31 of this Superseding Indictment are repeated and realleged as if set forth fully herein.

33. From at least in or about 2019, up to and including at least in or about 2021, in the Southern District of New York and elsewhere, BRIAN BENJAMIN, the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit: (1) bribery, in violation of Title 18, United States Code, Section 666; and (2) honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

34. It was a part and an object of the conspiracy that BRIAN

BENJAMIN, the defendant, being an agent of the government of the State of New York, which in a one-year period received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the State of New York involving something of value of $5,000 and more, in violation of Title 18, United States Code, Section 666(a)(1)(B).

35.   It was further a part and an object of the conspiracy that BRIAN BENJAMIN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the public of its right to his honest services as an elected legislator of the State of New York, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346.

## Overt Acts

36.   In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about May and June 2019, BRIAN BENJAMIN, the defendant, used his official authority to allocate state funding to Organization-1.

b.   On or about June 20, 2019, BENJAMIN sent CC-1 a text message informing CC-1 of the allocation of state funding to Organization-1.

c.   On or about July 8, 2019, CC-1 gave directly to BENJAMIN three checks totaling approximately $25,000, which were written in the names of other people or entities, as contributions to BENJAMIN's Senate Campaign.

d.   From in or about 2019 to in or about 2021, CC-1 procured numerous contributions for BENJAMIN's Comptroller Campaign.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Bribery)

The Grand Jury further charges:

37.   The allegations contained in paragraphs 1 through 31 and 36 of this Superseding Indictment are repeated and realleged as if set forth fully herein.

38.   From at least in or about 2019, up to and including at least in or about 2021, in the Southern District of New York and elsewhere, BRIAN BENJAMIN, the defendant, being an agent of the government of the State of New York, which in a one-year period received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, something of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the State of New York involving something of value of $5,000 and more, to wit, BENJAMIN solicited and received campaign contributions from CC-1 intending to be influenced in connection with BENJAMIN's use of official authority and influence to obtain the State Grant for Organization-1.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT THREE
### (Honest Services Wire Fraud)

The Grand Jury further charges:

39.   The allegations contained in paragraphs 1 through 31 and 36 of this Superseding Indictment are repeated and realleged as if set forth fully herein.

40.   From at least in or about 2019, up to and including at

least in or about 2021, in the Southern District of New York and elsewhere, BRIAN BENJAMIN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the public of its right to his honest services as an elected legislator of the State of New York, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, BENJAMIN solicited and received campaign contributions from CC-1 in exchange for BENJAMIN's agreement to use, and actual use of, his official authority and influence to obtain the State Grant for Organization-1.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

## COUNT FOUR
### (Falsification of Records)

The Grand Jury further charges:

41.   The allegations contained in paragraphs 1 through 31 and 36 of this Superseding Indictment are repeated and realleged as if set forth fully herein.

42.   In or about July 2019, in the Southern District of New York and elsewhere, BRIAN BENJAMIN, the defendant, knowingly did falsify and make a false entry in a record and document with the intent to impede, obstruct, and influence the investigation and

proper administration of a matter within the jurisdiction of a department or agency of the United States, and in relation to and in contemplation of any such matter, to wit, BENJAMIN falsified contribution forms for contributions to his Senate Campaign by directing CC-1 to provide information indicating such contributions were made by others, when in fact, as BENJAMIN knew, those contributions were made and funded by CC-1, with the intent to impede, obstruct, and influence the investigation and proper administration of a contemplated matter, which matter was within the jurisdiction of the United States Department of Justice.

(Title 18, United States Code, Sections 1519 and 2.)

## COUNT FIVE
### (Falsification of Records)

The Grand Jury further charges:

43.  The allegations contained in paragraphs 1 through 31 and 36 of this Superseding Indictment are repeated and realleged as if set forth fully herein.

44.  In or about August 2021, in the Southern District of New York and elsewhere, BRIAN BENJAMIN, the defendant, knowingly did falsify and make a false entry in a record and document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department or agency of the United States, and in relation to and in contemplation of any such matter, to wit, BENJAMIN falsely

indicated on an executive appointment questionnaire while under consideration to be appointed Lieutenant Governor of New York that he had never "directly exercised [his] governmental authority (either as a Legislator or Executive official) concerning a matter of a donor [he] directly solicited," when in fact BENJAMIN had procured the State Grant for Organization-1, which BENJAMIN knew was controlled by CC-1, whom he had repeatedly solicited, with the intent to impede, obstruct, and influence the investigation and proper administration of a contemplated matter, which matter was within the jurisdiction of the United States Department of Justice.

(Title 18, United States Code, Sections 1519 and 2.)

### FORFEITURE ALLEGATIONS

45. As a result of committing the offenses alleged in Counts One through Three of this Superseding Indictment, BRIAN BENJAMIN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property constituting or derived from proceeds obtained directly or indirectly as a result of the commission of the said offenses, including, but not limited to, a sum of money in United States currency representing the amount of proceeds traceable to the

commission of said offenses that the defendant personally obtained.

### Substitute Asset Provision

46.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and Title 28, United
States Code, Section 2461.)


_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

BRIAN BENJAMIN,

Defendant.

### SEALED SUPERSEDING INDICTMENT

S2 21 Cr. 706 (JPO)

(18 U.S.C. §§ 371, 666,
1343, 1346, 1519, and 2.)

DAMIAN WILLIAMS
United States Attorney

_Foreperson_

Sealed Superseding Indictment, Arrest Warrant
+ True Bill filed before OTW on 4/11/22