

# Kramer Levin

**Barry H. Berke**
Partner
**T** 212.715.7560
**F** 212.715.7660
bberke@kramerlevin.com

1177 Avenue of the Americas
New York, NY 10036
**T** 212.715.9100
**F** 212.715.8000

**November 9, 2022**

**BY ECF AND EMAIL**

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    <u>United States v. Benjamin</u>, No. S2 21 Cr. 706 (JPO)

Dear Judge Oetken:

      On behalf of our client Brian Benjamin, we respectfully submit this letter to bring to the Court's attention serious discovery failures by the government that are undermining the defense's efforts to prepare for trial. In addition to the relief set forth below, we respectfully request a conference at the Court's convenience to discuss these issues given the quickly approaching trial date, if the indictment survives our motion to dismiss.

      *First*, the government failed to disclose to the defense until October 2022 that *for more than a year* it has been sitting on nearly 100,000 emails obtained from certain email accounts used by its principal cooperating witness, Gerald Migdol ███████████████
██████. As described further below, the last-minute production of these emails appears to have been caused by the government's failure to ensure that they were thoroughly searched for relevant information and promptly reviewed for any privileged material. The result is that the government only very recently disclosed the existence of these documents to the defense, and with little more than two months remaining before the potential trial in this case, will be producing a large cache of potentially highly relevant documents regarding its primary cooperating witness, which includes 87,000 emails that it had never before reviewed for *Brady* or Rule 16 material.

      Given the volume of emails relating to the prosecution's main cooperating witness, the prosecution's indefensible failure to produce them long ago, and the fast-approaching trial date, we ask that to help mitigate the prejudice caused by the government's actions, the Court order the government to provide to the defense by November 18, 2022 all 3500 material, as well as good-faith witness and exhibits lists, so that the defense can focus its review of these documents and more efficiently identify any exculpatory information, necessary



investigative steps, as well as other evidence, in time for use at trial. Finally, in order to determine whether further relief is warranted, we ask that the Court order the government (including the prosecution and filter teams) to submit declarations regarding the reasons for its delay and failure to thoroughly search these documents for Rule 16 and/or *Brady* material.

*Second*, the government has refused to search for and produce to the defense other critical materials regarding Migdol. The materials include, among other things, communications concerning Mr. Benjamin and the charges in this case found in Migdol's Gmail and iCloud accounts, as well as on his laptop computer. Migdol has said in proffer sessions with the government that he sent text messages relevant to the case from his laptop, using his iCloud account, and documents reflect that relevant emails were sent to his Gmail account. Despite this admission, the government has studiously and strategically avoided taking physical possession of or searching this information, and has refused the defense's requests that it do so, relying on the fiction that it does not have access to or control over it.

There is no question, however, that the government does have access to and control over these materials. The terms of Migdol's cooperation agreement require him to provide to the government whatever information it seeks. Indeed, Migdol, who has met with the government at its insistence at least seven times, has previously provided the government with documents upon the government's command, including specific documents from one of the accounts at issue. Rule 16 requires the government to produce documents material to the defense that are "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1). *Brady v. Maryland*, 373 U.S. 83 (1963) requires that the government affirmatively search for and produce information helpful to the defense not simply in its possession, but also within its control. Particularly given Migdol's centrality to the government's case, the demonstrable likelihood that the materials at issue contain relevant information, and the government's course of dealings with Migdol, the government cannot maintain a posture of willful blindness in order to shirk its discovery obligations. We respectfully ask that the Court compel the government to produce these materials promptly. Alternatively, we ask that the Court so-order the Rule 17(c) subpoena attached to this submission as Exhibit K, which directs Migdol himself to provide these materials to the defense by November 29, 2022.

**I.     Background**

    **A.     The Government, Without Explanation, Failed To Review And Produce Nearly 100,000 Documents Obtained From The Migdol Organization**

At the first conference in this case on April 18, 2022, the government advised the Court that it planned to make a "full discovery production" in the next five weeks – *i.e.*, by the end of May. (*See* Apr. 18, 2022 Tr. 3:24-4:5). At the next conference, the government provided a discovery update and represented to the Court that it had produced the "vast majority of discovery" with only "some discrete items" remaining to be produced "within the next month." (*See* May 12, 2022 Tr. 2:19-22). Since that time and contrary to its representations, the government has made more than ten additional productions and produced close to one million documents.



Given the sheer volume of discovery in this case, which has continued in spite of the government's previous representations, the defense has repeatedly asked for confirmation that all materials obtained from Migdol have been produced.  (*See, e.g.*, July 11, 2022 defense letter, attached as Ex. A).  The government responded that it had produced all such materials "other than [those] segregated as potentially privileged and therefore unavailable to the investigative team." (*See* July 14, 2022 government letter, attached as Ex. B).

What the government failed to disclose, however, is that the set of "potentially privileged materials" consisted of nearly 100,000 emails from the accounts of Gerald Migdol, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ that the government had obtained *over ten months earlier*, in August 2021, after executing a search warrant on the Google accounts maintained by the Migdol Organization, a real-estate management company owned and controlled by the Migdols, and which they never reviewed for Rule 16 or *Brady* material. As the government disclosed to the defense for the first time during a phone call on October 24, 2022, the government treated the entirety of the warrant return for the Migdol Organization emails as "potentially privileged" on the tenuous basis that Gerald ▌▌▌ Migdol are qualified as lawyers, even though they run a real-estate management business.[1] The government's filter team apparently then ran a number of search terms purportedly to identify "relevant" information, and after reviewing the documents that hit on those terms for potentially privileged information, released some 13,000 to the prosecution team, which were ultimately shared with the defense. But those search terms, which the government shared with the defense for the first time on October 28, 2022 after we insisted on reviewing them, were patently deficient.  Indeed, they did not even include ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (*See* Ex. C ¶ 13(s)). ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ It is puzzling that the government chose to run such an obviously deficient set of search terms across when it expressly noted ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (*See id.* ¶ 24).

Further compounding the harm, rather than promptly insisting that counsel for the Migdols review the remaining 3,740 documents that hit on the government's search teams and

---

[1] ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (SDNY_BB_00000224- 00000302), attached as Ex. C ¶ 12(b)).  Even if the Migdols devote some small share of their time to personally provide pro bono legal advice in connection with this subsidiary (which is not alleged to have had any involvement in the charged crimes), ▌▌



which the filter team had identified as potentially privileged, so that any non-privileged materials could be released to the defense, it appears the government sat on these documents for nearly one year. While we do not know exactly when the filter team provided this set of emails to counsel for the Migdols to review, it was not until October 28, 2022 that the government advised that counsel for the Migdols "have now completed their reviews," and provided the privilege log created by counsel for Migdol. (The government has yet to provide any privilege log created by ███████████████.) (*See* Oct. 28, 2022 government email, attached as Ex. D, at 1). Of the 3,740 emails, Migdol is claiming privilege over only 289 – very few of which concern any actual legal advice provided by the Migdols. The government has yet to produce any of the emails that counsel for the Migdols have now conceded are not privileged.

Far more problematic, there remain approximately 87,000 emails in the government's possession – *i.e.*, those that did not hit on its "relevance" search terms – which we understand the government has not reviewed at all, and which very likely contain relevant, and potentially exculpatory, information, given the obvious deficiencies in the search terms the government chose to employ. While on October 31, 2022, the government stated that it would provide these documents to us so that we can review them ourselves, it still has not done so. And even if they were turned over today, with the potential trial fast approaching, it will be extremely challenging for the defense to conduct a thorough review of these emails in time to make use of them for trial.

> B.   **The Government Has Strategically And Improperly Avoided Taking Physical Possession Of Other Highly Relevant Material From Migdol**

The government's conduct in failing to promptly and effectively search and turn over highly relevant information relating to its principal cooperator is not an isolated instance in this case. As a result of our continued inquiries, we have learned that there are other Migdol materials the government is aware are likely to contain highly relevant and potentially exculpatory information, which it has failed to search at all. The government's defense, apparently, is that it is entitled to ignore these materials because they are in the physical possession of its primary cooperating witness and it has not asked him to turn them over.

For example, the government has strategically avoided obtaining Migdol's laptop and iCloud account despite knowing – for at least ten months –they contain highly relevant information. According to ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ (*See* Sept. 23, 2022 defense letter, attached as Ex. E, at 1 (citing SDNY_BB_00122946)). Yet, the government never bothered to request any data from Migdol's laptop or iCloud account, nor did it seek to collect even the particular text messages he purported to describe in his proffers until we pressed for them.

On September 23, 2022, we cited ████████████████ and requested that the government produce data from Migdol's laptop and iCloud account no later than October 5, 2022. (*Id.* at 2). In response, the government disclaimed any obligation to do so on the basis that it "did not obtain, and therefore is not in possession of, the requested data." (*See* Sept. 26,

4



2022 government email, attached as Ex. F). We notified the government that we "plan to subpoena that material, unless the government would like to request that its principal cooperator make that material available to both sides." (*See* Sept. 27, 2022 defense email, attached as Ex. G). It was only then that the government produced to us a single photo of Migdol's laptop screen showing h█████████ ██████████████ ████████████████ – notifying us that the government had "requested and obtained from counsel for Gerald Migdol copies of the messages" referenced in our letter. (*See* Ex. D, at 4).

Similarly, the government has refused to obtain or review materials from Migdol's personal Gmail account. The government knows the account contains materials relevant to this case, for example, because one of the documents it questioned Migdol about during proffer sessions was an email ████████████ ████████████████████████ █████████ █████████. The government's production of materials from other custodians and data sources further reveals that Migdol often communicated with Mr. Benjamin or members of Mr. Benjamin's staff through his Gmail account. Even though some of the most critical emails in this case were transmitted through Migdol's Gmail account, the government has made the strategic decision to avoid obtaining the emails from him, which Migdol is required to provide if requested under the terms of his cooperation agreement.

The government does not contest that the information from these data sources is material to the defense, but continues to resist production based on an improperly narrow view of its discovery obligations. On October 12, 2022, we reiterated our requests for data from Migdol's laptop, iCloud account, and Gmail account. (*See* Oct. 12, 2022 defense letter, attached as Ex. H, at 3). On October 20, 2022, the government denied our requests, reasserting its position that none of the data was in its "possession." (*See* Ex. D, at 2-3).

II.     Argument

    A.     **The Government Must Provide Further Information Regarding Its Case And Delay In Producing The Migdol Organization Emails**

As a result of the government's delay in producing the Migdol Organization emails (including the 87,000 that have not been reviewed), the defense will be prejudiced in its ability to review and make effective use of them for trial, even if they are turned over tomorrow. To make effective use of these emails, the defense must not only search and review them for relevant and exculpatory materials, but also follow up on leads and perform investigative work in advance of trial, while also continuing to attempt to complete our review of the close to one million other documents the government has produced, file *in limine* motions, prepare witness outlines, and do all of the other work that takes place in the weeks leading up to trial. Accordingly, to help mitigate this prejudice, we ask the Court to order the government to produce 3500 material, as well as good-faith witness and exhibit lists, by November 18, 2022. This is a modest request, particularly in light of the commitment the government made before we filed our pretrial motions that it would produce 3500 material eight weeks before trial (*i.e.*, by November 28, 2022). (*See* June 15, 2022 government email, attached as Ex. I, at 4 ("Based on the circumstances of this case, the Government is prepared to produce [3500 and *Giglio*] material

5



as early as eight weeks prior to trial, subject to restrictions to protect the privacy of individuals the Government does not expect to call as witnesses at trial, which would be negotiated by the parties."))[2] It is also a remedy that other courts have imposed to ameliorate the harm caused by similar discovery failures.

For example, earlier this year, in *United States v. Wynder*, Judge Castel ordered production of 3500 material, as well as good-faith exhibit and witness lists three months before trial to remedy the government's inexcusably late production, including approximately 17,000 documents "obtained as a result of a search warrant which long ago had been reviewed for privilege and responsiveness to the warrants." No. 20-CR-470 (PKC), 2022 WL 3572881, at *1 (S.D.N.Y. Aug. 19, 2022). Judge Castel found no bad faith on the government's part, but determined that the errors "were recurrent and display a naïve attitude on the part of the line prosecutors that all that should have been done by paralegals and others was done and that they bear a very limited oversight role." *Id*. Accordingly, the Court ordered the government to make early production of 3500 material and its lists of exhibits and witnesses, in addition to adjourning the trial.[3] *Id*. at *5.

In this case, the reasons for the government's discovery failures require further investigation, and the defense reserves the right to request additional remedies or sanctions as the facts emerge. We respectfully submit that the first step in getting to the bottom of what happened here is to require the prosecutors involved to submit sworn declarations providing specifics concerning their handling of these materials. Among other things, the declarations should provide the following information:

- The date the emails were first received by the government, whether by the FBI, the U.S. Attorney's Office, or some other agency.

- The date the members of the prosecution team first became aware that the emails had been received.

- The identities of the individuals involved in the decision to designate the entirety of the production as "potentially privileged" and the basis for doing so.

---

[2]  The prosecution has no basis to resist this production given this is not a case that presents witness safety or similar concerns. Indeed, the prosecution produced Gerald ▇▇▇▇▇ Migdol's witness statements made prior to the return of the indictment pursuant to its *Brady* obligations and related to its drafting of, and threats surrounding, Gerald Migdol's plea allocution.

[3]  In connection with the government's discovery failures in *Wynder*, the Chief of the Criminal Division advised Judge Castel that the executive staff of the U.S. Attorney's Office was conducting "a review of ameliorative measures to reduce the risk of recurrence in other cases," and was to provide an update to Judge Castel by October 14, 2022. *Id*. at *5. Any such ameliorative measures seem to have failed, yet again, in this case.



- The date the emails were provided to the filter team, and if there was a delay in doing so, the reason for that delay.

- The identities of the individuals involved in the creation of the search terms that the filter team ran on the emails, and the basis for excluding terms self-evidently relevant to the case, including among others, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ .

- The date the filter team ran the searches, and if there was a delay in doing so, the reason for that delay.

- The date the search results were provided to the Migdols' attorneys for review.

- Any communications with counsel for Gerald ▇▇▇▇▇▇ Migdol regarding the review.

- The identities of the individuals involved in the decision not to review the approximately 87,000 emails that did not hit on the list of search terms.

In the face of repeated discovery failures by this office in recent years, courts in this District have required the government to submit sworn statements explaining their conduct, particularly when that conduct at the very least "bespeak[s] of negligence [if] not conduct that was intentional or recklessly indifferent to the rights of [the defendant]." *See United States v. Jain*, No. 19-Cr-59 (PKC), 2020 WL 6047812, at *1 (S.D.N.Y. Oct. 13, 2020); *see also United States v. Nejad*, 487 F. Supp. 3d 206, 225 (S.D.N.Y. 2020) (ordering the members of the trial team, two unit chiefs, and a Special Assistant U.S. Attorney to submit sworn declarations to address a list of questions with regard to the failure to timely disclose *Brady* evidence). The Court should do the same here.

As the court noted in *Wynder*, there are a range of sanctions the courts have imposed for Rule 16 violations, including preclusion of evidence pursuant to Rule 16(d)(2)(C) and an adverse inference instruction, among others. 2022 WL 3572881, at *4-5; *see also United States v. Mason*, No. S2 06 Cr. 80(NRB), 2008 WL 281970, at *3-4 (S.D.N.Y. Jan. 25, 2008). The order entered in this case pursuant to Federal Rule of Criminal Procedure 5(f) contemplates a similar set of sanctions, including dismissal, for *Brady* violations. After the facts are further developed, we will request the opportunity to be heard on whether further sanction or remedies, in addition to those we have requested here, are warranted.

**B.    The Court Should Compel The Government To Produce Information From Migdol's Laptop, As Well As His iCloud And Personal Gmail Accounts**

The government's failures with regard to Migdol's laptop and iCloud and personal Gmail accounts raise different, yet no less troubling, issues, as the government's wholesale failure to review or produce documents from its main cooperator that it has held for nearly a year. As described above, the government has known for months that these contain information that is highly relevant to the case. Migdol has told it that he used the laptop and

7



iCloud accounts to send text messages relating to the case, and the government is aware of, and has questioned Migdol about, relevant emails that were sent to his Gmail account. If the government were truly interested in obtaining relevant evidence and ascertaining the facts, it would have directed Migdol to provide all of this information to it long ago. There is no question that it has the authority to do so: Migdol's cooperation agreement provides that Migdol "shall provide to [the U.S. Attorney's Office], upon request, any document, record, or other tangible evidence relating to matters about which this Office or any designated law enforcement agency inquires of him."[4] (*See* Apr. 6, 2022 Cooperation Agreement (SDNY_BB_00130427–00130433, at 00130429), attached as Ex. J). And in fact, it has previously exercised its authority under the agreement: While declining to obtain or produce any further information, the government directed Migdol to provide it with the substance of a text message from his laptop referenced during his proffers, which the defense had requested. Clearly, the government's decision not to require Migdol to produce to it the rest of the contents of his laptop and iCloud and Gmail accounts is a strategic one to avoid obtaining information that could undermine its case or be used to impeach its principal cooperator.

The government, however, is not permitted to pick and choose among what information it obtains from Migdol. Rule 16 requires the government, upon request, to permit a defendant to inspect and copy an item material to the preparation of the defense "if the item is within the government's possession, ***custody or control***." Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). "Control has been defined to include the legal right to obtain the documents requested upon demand," a term which is "broadly construed." *United States v. Stein*, 488 F.Supp.2d 350, 361 (S.D.N.Y. 2007) (citations omitted); *see also United States v. Tomasetta*, No. 10 CR 1205 PAC, 2012 WL 896152, at *5 (S.D.N.Y. Mar. 16, 2012) ("If the Government has a written agreement with the third party giving it the legal right to obtain documents upon demand . . . the Government may be in 'control' of such materials, even if in the possession of third parties."). There is no question, as a practical and legal matter, that the government has control over these materials and can and should require Migdol to turn them over.

Judge Kaplan's decision in *United States v. Stein* is directly relevant here. In *Stein*, the defendants moved for an order compelling the government to produce certain materials in the files of KPMG, which was cooperating with the government pursuant to a deferred prosecution agreement, in its criminal tax prosecution of certain former KPMG partners. *Id.* at 352. As with Migdol's cooperation agreement, KPMG's deferred prosecution agreement granted the government what the court described as "the unqualified right to demand production by KPMG of any documents it wishes for purposes of this case." *Id.* at 360. And, as here, the government had previously obtained certain materials from KPMG at the defense's insistence, which the court viewed as "a tacit acknowledgement . . . that the government has the legal right to require KPMG to produce documents for the purpose of enabling the government to disclose them to the defense." *Id*. at 355. Based on the provision in KPMG's deferred prosecution agreement and a plain reading of Rule 16, the court found that the documents requested by the defense were "within the possession, custody or control of the government" for purposes of the

---

[4]      Among other things, the agreement also provides that "any assistance Migdol may provide to federal criminal investigators shall be pursuant to the specific instructions and control of this Office and designated investigators." *Id*.



government's discovery obligations. *Id.* at 362. The court found that to conclude otherwise "would read the words 'custody or control' out of the rule in flat contravention of the principle that all words in a statute, rule or contract are to be given meaning whenever possible."[5] *Id.* at 363.

There is no difference between the provision in KPMG's deferred prosecution agreement and the provision in Migdol's cooperation agreement requiring him to provide documents to the government upon request. As in *Stein*, the government's crabbed reading of Rule 16 would read "custody or control" out of the rule, and defy the practical realities and legal obligations of its relationship with Migdol. Accordingly, the government must obtain from Migdol and produce to the defense all documents covered by Rule 16, including information material to preparing the defense. Such documents include the following, including those found on Migdol's laptop or in his iCloud or Gmail accounts:

1. All documents and communications concerning Brian Benjamin, the subject matter of this case, the investigation of the case, or Migdol's cooperation in the case.

2. All documents and communications concerning any actual or potential fundraising, donation, campaign or other political contribution, support or assistance provided to or requested by any candidate for public office, elected official or political campaign.

3. All documents and communications concerning any public funding or grants requested by or received by Migdol (including anyone acting on behalf of Migdol), the Migdol Organization or Friends of Public School Harlem.

4. All documents and communications between (a) Migdol and his counsel and (b) the U.S. Attorney's Office, Southern District of New York, the Federal Bureau of Investigation or the Manhattan District Attorney's Office, including without limitation any documents that refer to the subject matter of those communications (such as forwarded emails from the U.S. Attorney's Office).

Finally, should the Court decline to find that these materials are within the government's custody or control for purposes of Rule 16, we ask that the Court so-order the Rule 17(c) subpoena attached as Exhibit K, to be served directly on Migdol and returnable on or before November 29, 2022. The documents sought by the subpoena (which include the categories described in paragraphs 1 through 4, above), are plainly discoverable, as they are material to preparing the defense; moreover, compliance with the subpoena would not be not unreasonable or oppressive. *See United States v. Weigand*, 520 F. Supp. 3d 609, 613 (S.D.N.Y.

---

[5] Further, the court rejected the government's argument that because this provision was "standard" in such agreements and the result of equating it with control under Rule 16 would be "untenable," it should not be required to obtain and produce the documents to the defense. *Id.* at 363. The court observed, "If [the government] is uncomfortable with the consequences of such provisions, it need not insist upon them in future cases." *Id.* at 364.



2021) (citing *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), *as amended* (Feb. 20, 2008)); *see also Stein*, 488 F. Supp. 2d at 36 ("The text of Rule 17(c) alone strongly suggests the conclusion that the subpoena should be enforced unless compliance would be unreasonable or oppressive."). To the extent the Court finds it applicable, the subpoena also meets the requirements of *United States v. Nixon*, 418 U.S. 683 (1974), as it seeks documents that are relevant, admissible, and sufficiently specific. Should the government and/or Migdol oppose this application or move to quash the subpoena once issued, we respectfully reserve the right to make additional arguments in support of compliance with the subpoena.

### III.   Conclusion

For the reasons set forth above, we respectfully request that the Court issue an order compelling the government to:

1. Produce forthwith all emails obtained from the Migdol Organization for custodians Gerald Migdol, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

2. Provide to the defense, no later than November 18, 2022, 3500 material, as well as good-faith witness and exhibit lists;

3. Submit declarations from the members of the prosecution and filter teams responding to the questions set forth above, at page 7-8;

4. Obtain from Migdol and produce to the defense the categories of information set forth above, at page 10, including any such information found on Migdol's laptop or in his iCloud and Gmail accounts. Should the Court decline to find that this information is in the government's possession, custody, or control, we ask that it so-order the Rule 17(c) subpoena attached hereto as Exhibit K.

Respectfully submitted,

*/s/ signatures*

Barry H. Berke
Dani R. James
Darren A. LaVerne

10