

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

<em>The Silvio J. Mollo Building<br>One Saint Andrew's Plaza<br>New York, New York 10007</em>

November 17, 2022

**By ECF**

Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

   Re: *United States v. Brian Benjamin*, S2 21 Cr. 706 (JPO)

Dear Judge Oetken:

  The Government respectfully submits this letter in opposition to defendant Brian Benjamin's motion for (i) early 3500 material and Government witness and exhibit lists, (ii) materials not in the Government's possession, and (iii) issuance of a subpoena to Gerald Migdol pursuant to Rule 17(c). (Dkt. No. 68, hereinafter the "Motion" or "Mot."). For the reasons detailed below, the defendant's motion should be denied in its entirety.

  **I.** **Factual Background[1]**

   A. The "@migdolnyc" Emails

  In or about July 2021, the Government obtained a search warrant for "@migdolnyc.com" email accounts utilized by Gerald Migdol, ▇▇▇▇▇▇▇, and ▇▇▇▇▇▇▇ (the "MigdolNYC Emails Warrant" and the "MigdolNYC Emails," respectively). To be clear, at that time, Gerald Migdol had not yet been indicted, let alone entered into a cooperation agreement with the Government.[2] Moreover, the Government was unaware of the New York state grant to Friends of Public School Harlem ("FOPSH") that later formed the basis of the bribery and honest services fraud charges contained in the April 2022 indictment of the defendant and to which Gerald subsequently pled guilty. Consequently, the scope of the MigdolNYC Emails Warrant was limited to evidence of Gerald's involvement in a straw donor scheme and evidence of the defendant's knowledge of or participation in the same.

  Further, as reflected in the affidavit submitted in support of the MigdolNYC Emails Warrant, at the time that the Government obtained the MigdolNYC Emails Warrant, the Government understood that both Gerald and ▇▇▇▇▇▇▇ were licensed attorneys in the State of New

---

[1] The factual background provided below was also conveyed to the defense, in sum and substance, over the course of various phone calls and email exchanges prior to the defendant filing the Motion.

[2] Gerald Migdol was arrested in November 2021.

York who, at least with respect to some aspects of their family-owned business, were engaged in the practice of law.[3] The Government also understood ▮ to be the Migdols' administrative assistant, who therefore might have been copied on emails regarding legal matters. Accordingly, in seeking the MigdolNYC Emails Warrant, the Government disclosed to the magistrate judge that Gerald and ▮ were attorneys and represented that it would employ procedures to protect attorney-client and attorney-work product privileges, including through the use of a filter team. (Berke Decl., Ex. C ¶ 25).

Because Gerald and ▮ were licensed attorneys, the MigdolNYC Emails were treated as potentially privileged in their entirety and were therefore made inaccessible to the case team. Following the filter team's review for privilege, the filter team would release to the case team only those materials that the filter team determined were not potentially privileged.[4]

To aid in the filter team's review of the MigdolNYC Emails, the case team provided search terms likely to yield documents responsive to the MigdolNYC Emails Warrant, and the filter team prioritized review of documents that contained one or more of the relevance search terms (the "Relevance Set").[5] The filter team reviewed the Relevance Set and released the non-privileged documents to the case team (approximately 13,420 documents), all of which were produced to the defendant on May 27, 2022.[6]

Following Gerald's arrest, documents within the Relevance Set that the filter team had determined were potentially privileged were provided to counsel for Gerald and ▮, the potential holders of any privilege, so that their counsel could conduct a privilege review.[7] Gerald and ▮ have completed their review of the potentially privileged documents in the Relevance Set and have designated approximately 1,898 documents as not subject to any privilege. The

---

[3] For instance, ▮ has appeared as an attorney in this District in a civil matter pertaining to the Migdols' real estate business. *See Capital One, N.A. v. 201 W 134 St LLC*, 12 Civ. 05025 (JM) (S.D.N.Y.). Furthermore, as the defendant acknowledges, Mot. 3 n.1, a subsidiary of the Migdol Organization provides legal services, specializing in pro-bono legal services for shelter residents and community-based organizations.

[4] The defendant's suggestion that Government should not approach seizure and review of a practicing attorney's email with the utmost care is astonishing. (Mot. 3).

[5] For the Court's reference, those terms are attached hereto as Exhibit A. These terms were provided to the defense on October 28, 2022.

[6] The cover letter for this production expressly disclosed that the production contained only a subset of the seized materials deemed non-privileged by a filter team.

[7] As the defense is aware, and as discussed more fully herein, a filter process was likewise utilized with respect to material seized from the defendant's email, iCloud, and phone. Content designated by the filter team as potentially privileged was sent to the defense in order for them to make any applicable privilege claims. In response to inquiries by the Government regarding the progress of *the defense's* review of such material, defense counsel has repeatedly resisted the idea of the filter team rather than the defense making final privilege determinations. This is in stark contrast to the defense's position in the Motion that it was somehow improper for the Government to allow the Migdols' counsel to review the MigdolNYC Emails and make privilege claims in the first instance.

non-privileged documents were recently released to the case team and are being produced to the defendant tomorrow, November 18, 2022.

Approximately 87,000 of the MigdolNYC Emails did not hit on any of the relevance search terms and therefore were not reviewed by the filter team as part of the Relevance Set (the "Non-Relevance Set"). As the Government has previously made clear to the defense, however, although this is the "raw" number of documents, the number of unique documents is approximately half that amount, because Gerald, ▮, and ▮ were often copied on the same emails, resulting in significant duplication. Furthermore, while the case team does not have access to the Non-Relevance Set, it is informed by Gerald's counsel that approximately 26,000 documents constitute irrelevant "junk" mail, such as promotional emails from third-parties.

As described above, because Gerald and ▮ were licensed attorneys, the Non-Relevance Set was treated as potentially privileged, subject to review by the Migdols' counsel. Accordingly, to date, the case team has not had, and does not have, access to the Non-Relevance Set.

Gerald was arrested in November 2021, and in April 2022, he gave consent for the Government to search all non-privileged material in the MigdolNYC Emails. This consent effectively eliminated the subject matter constraints of the MigdolNYC Emails Warrant and allowed the case team to retain material beyond the scope of that Warrant. To be clear, however, that consent did not waive any applicable privileges and did not grant the case team access to material appropriately designated as potentially privileged in light of the Migdols' status as licensed attorneys.

Gerald and ▮ are currently reviewing the Non-Relevance Set for privilege. It is the Government's understanding that Gerald will provide the Government with any documents over which he is *not* asserting privilege on or about November 21, 2022, at which time the filter team will release those documents to the case team, and the case team will direct its vendor to promptly produce the documents to the defendant. The Government expects that it will similarly be able to produce any documents over which ▮ is not asserting privilege shortly thereafter. As discussed *infra* § II.A, the Government is providing the defendant the entirety of the non-privileged Non-Relevance Set as a courtesy and at his request; he is in fact only entitled to those documents in the Non-Relevance Set, if any, that constitute Rule 16, *Brady*, or *Giglio* material.

### B. Gerald Migdol's Phone

In or about November 2021, the Government obtained a search warrant for Gerald's phone (the "Migdol Phone Warrant" and the "Migdol Phone," respectively). Because the Migdol Phone was obtained at the time of Gerald's arrest, and the Government's investigation of him was no longer covert, the filter team engaged with Gerald's counsel regarding claims of privilege. The filter team withheld from the case team the content over which Gerald asserted privilege and provided the case team with a copy of the non-privileged content. As with the MigdolNYC Emails, Gerald provided consent for the case team to retain non-privileged content that would have otherwise been beyond the scope of the Migdol Phone Warrant. With limited redactions for certain categories of non-discoverable information, such as personal identifiable information, all non-privileged data from the Migdol Phone received by the case team was produced to the defense

on or about May 9, 2022. Once again, the Government provided the defense with the entire non-privileged contents of the Migdol Phone despite the fact that it was only obligated to provide content constituting Rule 16, *Brady*, or *Giglio* material.

### C. Gerald Migdol's iCloud, Gmail, and Laptop

The Government never obtained a search warrant for Gerald's iCloud, his Gmail, or his laptop, nor has the Government requested that Gerald provide this data to the Government.

As detailed *infra* § II.B.2, during two proffers with the Government, Gerald described an iMessage exchange that he had with ███████ around the time of his arrest in November 2021.



a copy of which is attached hereto as Exhibit B. Because this exchange was expressly identified by Gerald in proffer sessions and requested by the defendant, as a courtesy the Government obtained it from Gerald and produced it to the defendant on October 7, 2022.

## II. Discussion

### A. The Defendant is not Entitled to 3500 Material and Government Witness and Exhibit Lists More than Two Months Before Trial

The Court should reject the defense's transparent effort to use the Non-Relevance Set as an excuse to extract 3500 material and witness and exhibit lists from the Government more than two months before trial. There has been no discovery violation and, even if there had been, the requested relief bears no rational connection to the defendant's claims.

*First*, the defense's hyperbole notwithstanding, the Government has not acted in bad faith. As the defense well knows, until April 2022, the Government's authority to review the MigdolNYC Emails was limited not only by the privilege review parameters outlined in its application for the MigdolNYC Emails Warrant, but also by the subject matter parameters of that warrant. Indeed, but for the scope of Gerald's consent provided in April 2022, it would have been entirely appropriate for the Government to limit its review to the non-privileged documents in the Relevance Set, as those documents represent a reasonable review of material responsive to the MigdolNYC Emails Warrant. However, under the particular facts of this case, including the scope of Gerald's consent, the Government took the position that it would produce Rule 16, *Brady*, and *Giglio* material, if any, from the non-privileged documents in the Non-Relevance Set. To be clear, the Government is now providing the entirety of the non-privileged Non-Relevance Set to the defense (rather than only those materials, if any, that constitute Rule 16, *Brady*, or *Giglio*) at the defense's explicit request. The Government could have insisted, but did not insist, on first reviewing the Non-Relevance Set and disclosing only that which it was obligated to (if anything). Instead, the Government permitted the defense to choose whether it wished to receive the entirety of the non-privileged Non-Relevance Set. Having rejected the Government's offer to cull this universe of documents, the defense should not now be heard to complain about its scope.

Furthermore, Gerald's consent did not waive applicable privileges and did not change the fact that Gerald and ▮ were licensed attorneys. Thus, an immovable piece of the document review and production process was and is a privilege review, which the Migdols' attorneys are currently conducting. The defendant provides no support for his suggestion that the Government should have ignored these facts and taken the privilege review out of the hands of the Migdols' attorneys. (Mot. 3).

*Second*, the defense's claims of prejudice are—to be generous—overstated. As detailed *supra* § I, the volume of unique, non-junk documents in the non-privileged Non-Relevance Set is a far cry from the "nearly 100,000" repeated throughout the defendant's motion. (Mot. 1, 2, 3). Moreover, these documents will be provided to the defense as soon as the Government receives them, which the Government expects will be no less than six weeks before trial. Furthermore, the Government has no reason to believe that the non-privileged Non-Relevance Set contains anything of significance (let alone a document rising to the level of *Brady* material) not otherwise disclosed in substance through the non-privileged Relevance Set (approximately 13,420 documents) or the non-privileged material from the Migdol Phone, which was never limited by the scope of the Migdol Phone Warrant and included over 22,000 message exchanges and over 1,000 emails, amongst other data. Indeed, while the defense complains about the search terms used to define the Relevance Set, they conspicuously fail to mention that those terms included, *inter alia*, seven different email addresses for the defendant, the defendant's name ("Benjamin"), and sweeping terms like "comptroller", "donat!", "contribut!", and "fundrais!".[8]

*Third*, the baselessness of the defendant's motion is made plain by the unrelatedness of the relief sought: disclosure of 3500 material and the Government's witness and exhibit lists more than two months before trial. The defense makes little effort to explain how these disclosures are in any way related to their review of the Non-Relevance Set. By definition, those disclosures would reflect the Government's fact-gathering and trial planning to date, which has *not* included access to, or review of, the Non-Relevance Set since it remains restricted to the filter team as of this filing. The defendant does not need these disclosures to review the Non-Relevance Set. He already has a 23-page speaking indictment, applications for various warrants obtained over the course of the Government's investigation, and the Government's responsiveness reviews of data obtained by warrant from the defendant's phone, iCloud, iPad, and email, amongst other things.[9] In seeking 3500 material and the Government's witness and exhibit lists more than two months before trial, the defendant plainly wants early insight into the Government's trial strategy and a strategic benefit to which he is not entitled.

To the extent the defendant argues that *United States v. Wynder*, 2022 WL 3572881 (S.D.N.Y. Aug. 19, 2022) supports the requested relief, he mischaracterizes that decision. In

---

[8] In keyword searches, the use of an exclamation point denotes a "wild card" allowing the search to capture a term in multiple iterations, including singular and plural.

[9] Prior to filing the Motion, the defense raised with the Government early disclosure of 3500 material and the Government's witness and exhibit lists should the Court deny the pending motion to dismiss. On November 1, 2022, the Government proposed to the defense a comprehensive schedule for disclosures and filings, indicating that it was not willing to agree to a schedule in piecemeal fashion. The defense did not respond and instead filed the Motion.

*Wynder*, the Government inadvertently failed to produce a significant volume of identified Rule 16 material that it intended to produce and incorrectly believed had been produced. *Id.* at **3-4. The court granted a defense request for a continuance of the trial but declined to order any other sanctions. *Id.* at *5. So as to address any advantage gained by the Government through the continuance, the defendants requested, and the Government consented to, disclosure of 3500 material and Government witness and exhibit lists. *Id.* at *5. It is not accurate to say, as the defendant does, that the court "ordered the government to make early production of 3500 material and its lists of exhibits and witnesses." (Mot. 6). Certainly, there is no finding in *Wynder* that such early disclosures are appropriate in the face of vague claims of a need to conduct review of materials whose disclosure is not squarely mandated by Rule 16, let alone *Brady* or *Giglio*.

*Finally*, the defendant's request for "sworn affidavits" regarding the origins of the Non-Relevance Set should be seen for what it is—an intimidation tactic—and rejected. (Mot. 6-7). There has been no bad faith by the Government in this case; the Government's conduct with respect to the MigdolNYC Emails was born out of efforts to respect the attorney-client and attorney work product privileges—a concern that has also characterized the Government's approach to materials seized from the defendant, including the use of a filter team. Indeed, it is impossible to conceive of any ill motive here given that the case team has also been prevented from accessing the potentially privileged materials. Moreover, the Government has been transparent with the defense: the "how we got here" detailed *supra* § I was shared with defense counsel orally and in writing prior to their filing of the Motion. Last but certainly not least, the Government has not tried to shield any non-privileged documents in the Non-Relevance Set from disclosure. To the contrary, the Government agreed to the defense's request for all non-privileged documents in the Non-Relevance Set, regardless of whether those materials are in fact disclosable. In light of the foregoing, there is no basis for the Court to order the requested affidavits.

> B. Gerald Migdol's Laptop and iCloud are not in the Government's Possession and are Therefore not Subject to Disclosure

Under the clear law of this Circuit, the Government has no obligation to obtain Gerald Migdol's laptop, his iCloud, or his Gmail, none of which the Government currently possesses.

> 1. Applicable Law

"It is well established that the Government's 'discovery and disclosure obligations extend *only* to information and documents in the government's possession.'" *United States v. Avenatti*, 559 F. Supp. 3d 274, 280 (S.D.N.Y. 2021) (quoting *United States v. Brennerman*, 818 F. App'x 25, 29 (2d Cir. 2020) (summary order)) (emphasis in original). As used in this context, "the government" refers to more than just the individual prosecutors handling the case; the "prosecutor is presumed to have knowledge of all information gathered in connection with his [or her] office's investigation of the case and indeed has a duty to learn of any favorable evidence known to [ ] others acting on the government's behalf in the case . . . ." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (internal quotations omitted). In other words, the Government's disclosure obligations extend to materials in the possession of the "prosecution team." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015). Beyond the prosecution team, however, "the Government has no obligation, under *Brady* or otherwise, to seek out information like a private

investigator and valet gathering evidence and delivering it to opposing counsel." *Avenatti*, 559 F. Supp. 3d at 280.

The Second Circuit has "never held that the 'prosecution team' includes cooperating witnesses." *Barcelo*, 628 F. App'x at 38 (quoting *United States v. Garcia,* 509 F. App'x 40, 43 (2d Cir. 2013)). To do "no more than provide information to the government and testify at trial," particularly when the cooperating witness "played no role in the investigation or in determining investigation or trial strategy," does not make the witness a member of the prosecution team. *Id.*; *accord United States v. Meregildo*, 920 F. Supp. 2d 434 (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015) ("Witnesses relate information they observe. Prosecutors do not direct witnesses to investigate, and witnesses do not advise prosecutors on trial strategy. As such, cooperating witnesses are rarely members of the prosecution team.").

2. Discussion

Because the Government's discovery obligations extend only to materials in the possession of the prosecution team, and cooperating witnesses are not members of the prosecution team, *Barcelo*, 628 F. App'x at 38, the defendant's motion to compel the Government to obtain Gerald's laptop, iCloud, and Gmail is meritless. *See Meregildo*, 920 F. Supp. 2d at 355 (holding, in the context of denying a motion to compel the Government to obtain a cooperating witness's Facebook information, that "[t]he fact that a cooperating witness signs a plea agreement and testifies at trial does not transform him from a criminal into a member of the prosecution team").

In seeking to compel the Government to obtain large swaths of data not currently in its possession, the defendant makes no effort to cite, let alone apply, the case law detailed above and *supra* § II.B.1. Instead, the defendant relies exclusively on *United States v. Stein*, in which the district court held that because the Government and third-party KPMG had entered into a deferred prosecution agreement that permitted the Government to demand documents from KPMG, all of KPMG's non-privileged documents were in the Government's "control" for purposes of Rule 16. 488 F. Supp. 2d 350, 362 (S.D.N.Y. 2007). In essence, *Stein* "imported civil discovery principles into a criminal case." *Meregildo*, 920 F. Supp. 2d at 443. As explained below, *Stein* is an outlier that cannot be squared with the prevailing law of this Circuit.

To the extent *Stein* suggests that the Government's disclosure obligations are broader under Rule 16 than under *Brady*, that rationale has been repeatedly rejected. For example, in *United States v. Chalmers*, the court denied a motion to compel the Government to collect various categories of documents from agencies that were not a part of the prosecution team and, in doing so, expressly rejected the argument that the prosecution team standard which applies to *Brady* material does not also apply to Rule 16. 410 F. Supp. 2d 278, 287, 289 (S.D.N.Y. 2006) ("The Court is not persuaded that the 'government' for purposes of Rule 16 should be any broader than the 'prosecution team' standard that has been adopted in the *Brady* line of cases."); *see also United States v. Blondet*, 2019 WL 5690711, at *5 n.4 (S.D.N.Y. Nov. 4, 2019) (denying Rule 16 motion for materials held by an agency not within the prosecution team); *United States v. Lobo*, 2017 WL 1102660, at *2 (S.D.N.Y. Mar. 22, 2017) (same); *cf. United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) ("Courts have construed the term 'government' in [Rule 16] narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the 'government' in general") (citing cases). The court

correctly reasoned that "[t]he concern of the Second Circuit . . . that a 'monolithic view' of government would 'condemn the prosecution of criminal cases to a state of paralysis' applies with equal force in the Rule 16 context." *Id.* (quoting *Avellino*, 136 F.3d at 255). Indeed, the Government has not found a single written decision from this District in which, relying on *Stein*, the court compelled the Government to obtain materials from a cooperating witness pursuant to Rule 16.[10]

The dearth of cases applying *Stein* is not surprising because it is impossible to square *Stein* with the Second Circuit's rationale for the prosecution team standard in the first place—placing a reasonable and rationale limit on the Government's disclosure obligations that is both consistent with due process and avoids grinding criminal prosecutions to a halt. *See United States v. Hunter*, 32 F.4th 22, 37 (2d Cir. 2022) ("Limiting disclosure obligations to the 'prosecution team' prudently prevents a prosecutor from needing to search the 'whole-of-government' for possibly material information in myriad cases and controversies before the courts. Such an obligation would clearly be an unworkable encumbrance on the system of justice."); *Avellino*, 136 F.3d at 255. Because of the Government's ability to obtain grand jury subpoenas, search warrants, and other types of process, broadly speaking it has the ability to obtain an almost limitless amount of information. Similarly, the Government could, in theory, ask nearly any third-party to voluntarily provide it with information or documents, and those parties might choose to comply. The defendant's arguments and misplaced reliance on *Stein* would require the Government to do so in every instance whenever demanded by the defense. Absent the prosecution team limit on the Government's disclosure obligations, discovery would be untenable not only in terms of its scope, but also in terms of defendants second-guessing the Government's investigative decisions by demanding that the Government obtain information or documents not already in its possession. And once in possession of a third party's materials, the Government would be saddled with the obligation of reviewing those materials for disclosable material, if any—a burdensome task that rightly informs the Government's investigative decisions about what materials to obtain from third-parties in the first place.

Finally, although not bearing on the legal analysis detailed above, the Government is obligated to point out that the defendant's allegations of Government misconduct and gamesmanship in this regard are entirely unfounded. The Government obtained and has produced (or will shortly produce) to the defense all non-privileged information on the Migdol Phone and in the MigdolNYC Emails, *without subject matter limitation*. This includes, but is not limited to, emails and text messages between Gerald and the defendant or members of the defendant's campaign or senate staff. Given that the defendant has the contents of the Migdol Phone and the contents of Gerald's principal email address used to conduct his real estate business, run Friends of Public School Harlem, correspond with the defendant and the defendant's staff, and to fundraise for the defendant, the Government has no reason to believe that Gerald's laptop, Gmail, or iCloud contain anything substantively additive. Moreover, that the Government documented and obtained

---

[10] Courts outside of this Circuit have expressly rejected *Stein*. *See United States v. Carson*, No. 8:09-cr-00077-JVS (C.D. Cal. Dec. 8, 2009) (Order, ECF No. 133) (rejecting "the contention that under Rule 16 the Government's obligation extends to materials in the possession of a private third party," and concluding that "[t]here are many reasons not to follow *Stein*'s lead," including that the tenor of the opinion was "inconsistent" with "Rule 16 case law in general").

from Gerald the iMessage exchange specifically identified by him in ▮▮▮▮ ▮▮▮▮ proffers demonstrates the Government's good faith. Serious attention to its discovery obligations, liberal disclosures, and good faith efforts to engage with defense counsel—consistent with governing law in this Circuit—do not and should not foist upon the Government an obligation to facilitate a defense fishing expedition through materials not in the Government's possession. Given these facts, the defense's casual allegations of misconduct are entirely baseless.

### C. The Requested Rule 17(c) Subpoena is Improper

The defendant has not and cannot demonstrate that his proposed Rule 17(c) subpoena to Gerald Migdol is proper.

#### I. Applicable Law

As an initial matter, the standard applicable to a Rule 17(c) subpoena is that articulated by the Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974) and not, as the defendant suggests, the standard proposed in former Judge Shira A. Scheindlin's opinion *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008). (Mot. 9-10). Courts in this district have declined to follow *Tucker* because "it is not the prevailing law" in this Circuit, *United States v. Barnes*, 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008); *see also id.* at *7 ("[A]ll district courts within the Second Circuit, aside from the *Tucker* court, have applied the *Nixon* analysis to third-party subpoenas issued by the defense."); *accord United States v. Blondet*, 2022 WL 485031, at *1 n.2 (S.D.N.Y. Feb. 16, 2022) (applying *Nixon* standard and noting that "the Second Circuit and district courts in this Circuit have almost unanimously deviated from *Tucker* and applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant" (internal quotations omitted)); *United States v. Cole*, 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021) (same); *United States v. Skelos*, 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) (same); *cf. United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (noting that the Second Circuit, as well as district courts in the Circuit, have applied the Nixon standard to Rule 17(c) subpoenas requested by a defendant).

Under *Nixon*, a subpoena *duces tecum* served pursuant to Rule 17(c) must seek information that is (1) relevant, (2) admissible, and (3) specifically identified. *Nixon*, 418 U.S. at 700; *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017). The chief purpose of Rule 17(c) subpoenas is to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). The rule is not meant to "provide an additional means of discovery" in criminal cases. *Id.* Moreover, "[t]he party requesting the subpoena must also show that the information sought is 'not otherwise procurable reasonably in advance of trial by exercise of due diligence,' that 'the party cannot properly prepare for trial without such production,' and that 'the application is made in good faith and is not intended as a general "fishing expedition."'" *Ulbricht*, 700 F.3d at 109 (quoting *Nixon*, 418 U.S. at 699-700); *see also United States v. Yian*, 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995) (requests accurately characterized as fishing expeditions "deserve[] to be quashed").

Consistent with those principles, it is well-established that a Rule 17(c) subpoena is not properly used to obtain material that could be used only, if at all, to impeach a potential government witness. *See, e.g., United States v. Nektalov*, 2004 WL 1574721, at *2 (S.D.N.Y July 14, 2004) ("documents sought solely for impeachment purposes are not the proper subject of a Rule 17(c)

subpoena"); *United States v. Jasper*, 2003 WL 1107526, at *2 (S.D.N.Y. Mar. 13, 2003) (quashing defendant's subpoena for personnel files regarding a government witness where the documents were sought only for impeachment and would not have been admissible at trial); *United States v. Nelson*, 2011 WL 2207584, at *4 (S.D.N.Y. June 3, 2011) ("Courts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment.") (quoting *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995)) (collecting cases); *United States v. Coriaty*, 2000 WL 1099920, at *7 (S.D.N.Y. Aug. 7, 2000). It is similarly axiomatic that a Rule 17 subpoena is not the appropriate method of seeking the prior statements of an anticipated trial witness. Indeed, Rule 17 by its terms expressly prohibits a party from serving a subpoena intended to obtain a witness's prior statements. *See* Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule.").

The proponent of the subpoena—here, the defendant—bears the burden of demonstrating by a preponderance of the evidence that the *Nixon* standard has been met. *Ulbricht*, 858 F.3d at 109; *United States v. Tagliaferro*, 2021 WL 980004, at *2 (S.D.N.Y. Mar. 16, 2021); *United States v. Pena*, 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016).

## II. The Defendant has not Satisfied *Nixon*

Other than a rote claim that the proposed subpoena to Gerald Migdol "seeks documents that are relevant, admissible, and sufficiently specific," Mot. 10, the defendant makes no effort to demonstrate that it satisfies the *Nixon* standard. Because it is the defendant's burden to make such a showing and not the Government's burden to prove a negative, that alone is a basis to deny the defendant's subpoena request. At a minimum, the defendant should be required to make a supplemental filing on this point prior to the Government responding.

This is particularly true given that the proposed subpoena is facially improper and smacks of a fishing expedition. For example, the subpoena seeks documents from as far back as two years before any of the charged conduct and as recently as today. (Berke Decl., Ex. K ¶ K). It further purports to create an ongoing duty to produce responsive materials created through trial. (*Id.* ¶ I). Furthermore, it seeks "all documents and communications" in each of four broad categories, belying any claim to specificity, let alone relevance or admissibility. (*Id.* ¶¶ 1-4). *See Pena*, 2016 WL 8735699, at *3; *Tagliaferro*, 2021 WL 980004, at *3. Finally, it is difficult to conceive of the relevance or admissibility of any of the documents requested in category four of the subpoena: communications between Gerald's attorneys and law enforcement authorities. (Berke Decl., Ex. K ¶ 4). *See, e.g., Skelos*, 2018 WL 2254538, at *5 (quashing subpoena calling for communications with the Government because, amongst other things, they would not be admissible).

In light of the defendant's failure to offer any argument regarding the proposed subpoena's compliance with the *Nixon* standard and the facial deficiency of the proposed subpoena, the defendant's request should be denied. In the alternative, the Court should defer ruling and require the defendant to submit a supplemental filing to which the Government can respond.

### III. Conclusion

For the forgoing reasons, the defendant's motion should be denied.

                                                Respectfully submitted,

                                                DAMIAN WILLIAMS
                                                United States Attorney
                                                Southern District of New York

By:   */s/* _____

                                                Celia V. Cohen
                                                Andrea M. Griswold
                                                Jarrod L. Schaeffer
                                                Assistant United States Attorneys
                                                Tel: (212) 637-2466 / -1205 / -2270

cc:  Counsel of Record (via ECF)

# EXHIBIT A



# EXHIBIT B



SDNY_BB_00185821